J. E. CAROTHERS ET AL. v. T. M. MOSELEY ET AL.

[55 South. 881.]

UNION OF CHURCH ORGANIZATIONS.  *Validity.*

> Where the right to property in controversy depends upon the validity of the union of two churches, the courts will not undertake to determine the validity of such union, as this is purely an ecclesiastical question, but will accept the decision, as to the validity of such union by the highest ecclesiastical authority of the church and award the property in accordance therewith.

APPEAL from the chancery court of Clay county.

HON. J. Q. ROBBINS, Chancellor.

Suit by J. E. Carothers et al. against T. M. Moseley et al. From a judgment for defendant, plaintiff appeals. The facts are sufficiently stated in the opinion of the court.

*W. C. Caldwell,* for appellant.

It is no answer, we submit, to our reliance on the decision of this court in *Mt. Helm Baptist Church* v. *Jones,* 79 Miss. 488, as conclusive in favor of appellants, to say, as counsel for appellee have said, that the church, whose property was involved in that case, was of the Congregational class, and that the church, whose property is involved in this case, is of the Associated class. The nature and inviolability of the trust must be the same in each instance. The decision in that case was not founded on any distinction between the two classes; but on the ascertained existence of the trust for a particular congregation of a particular denomination of Christians and on the continued adherence thereto by some of the members and the departure therefrom by others, as in the present case.

A house of worship can be no more sacred against diversion because conveyed to trustees for the benefit of a Baptist congregation, nor any less sacred against diversion because conveyed to trustees for the benefit of a Cumberland Presbyterian congregation. The trust is manifestly the same whether the church, for whose benefit it is created, be of the one class or the other; and courts of equity will protect it and enforce it in each instance alike.

The question here is not whether the Cumberland Presbyterian church at West Point is of the congregational class or of the associate class (though it is admittedly of the latter class); but whether the deed creates a trust and, if so, for what particular local church and who are the present adherents. Confessedly any congregation of any church of either class may lawfully be made the beneficiary of a religious trust, and terms sufficient to create such a trust for a congregation in the one class will suffice to create a trust for any congregation in the other class.

The terms and intent of the instrument, and not the class to which the beneficiary belongs, must be controlling when civil courts come to its construction and enforcement. A deed to one church like a deed to another church and like a deed to an individual must always be construed and enforced according to its terms and intent. It was so in the Mount Helm Baptist Church case, and it should be so in this case.

Civil rights are measured and controlled by the civil law and not by ecclesiastical polity. A conveyance of land is a civil contract. The rights resulting therefrom are civil rights, and they are obviously the same and bound to be the same whether the title be vested in trustees for the benefit of a Baptist congregation, or in trustees for the benefit of a Cumberland Presbyterian congregation. The trust created in either case is the same, and is equally protected by the civil law. The terms and intent of the deed are the same in each instance, and the law is no respecter of persons. A trust is a trust, and its beneficiaries are those who answer the description of the deed. *Mt. Helm Baptist Church* v. *Jones,* 79 Miss. 488; *Finley* v. *Brent,* 87 Va. 103, 11 L. R. A. 215; *Landrith* v. *Hudgins,* 121 Tenn. 676, 677; *Boyles* v. *Roberts,* 222 Mo. 690, and other authorities cited on pages 15, 20 and 21 of our original brief.

As before remarked, the decision of this court in the Mt. Helm Baptist Church case was not based on any difference in policy between churches of the congregational class and those of the associated class; but alone on the ascertained existence of a trust for a particular congregation of a particular denomination of Christians and the adherence thereto by some of the membership and the departure therefrom by others, as in the present case. The same remark is equally applicable to the adjudged cases generally, some of them having been of the one class and some of the other. For instance, in *Smith* v. *Pedigo,* 145 Ind. 361, 32 L. R. A. 839; *Mt. Zion*

*Baptist Church* v. *Whitmore,* 83 Iowa 147, 13 L. R. A.
198; *Park* v. *Champlin,* 96 Iowa 55, 31 L. R. A. 141, the
trust was in favor of churches of the Congregational
class as in the Mt. Helm Baptist Church case; and in
*Brent* v. *Finley,* 87 Va. 103, 11 L. R. A. 314; *McKinney*
v. *Griggs,* 5 Bush. 401, 6 A. D. 361; *Gartin* v. *Penick,*
5 Bush. 110; *Godfrey* v. *Walker,* 42 Ga. 562; *Watson* v.
*Garvin,* 54 Mo. 343; *Boyles* v. *Roberts,* 222 Mo. 690;
*Deaderick* v. *Lampson,* 11 Heis. 529; *Bridges* v. *Wilson,*
11 Heis. 458; *Rodgers* v. *Burnett,* 108 Tenn. 173; *Land-
rith* v. *Hudgins,* 121 Tenn. 676, and *Free Church of Scot-
land case,* Law Reports, Appeal Cases, 1904, p. 611, and
4. N. J. Ch. R. (3 Green) 77, the trust was in favor of
churches of the associated class. In all of these cases of
each class (and the number of cases of each class could
be greatly multiplied), the courts construed and applied
the trusts according to the terms and intent of the deed
and awarded the property to those answering its descrip-
tion, just as was done by this court in the Mt. Helm Bap-
tist Church case, and as we ask it to do in this case.

*Alexander & Alexander,* for appellees.

Counsel filed an elaborate brief tracing the organiza-
tion, history and union of the Cumberland Presbyterian
Church and the Presbyterian Church of the United
States of America contending that the union of the two
churches was valid and was a purely ecclesiastical ques-
tion with the decision of which the courts of the state
should not interfere and citing the following authori-
ties: *Fussell* v. *Hail,* 233 Ill. 73, 84 N. E. Rep. 42; *Ram-
sey* v. *Hicks,* 91 Rep. 344; *Landrith* v. *Hudgins,* a Ten-
nessee case (decided in 1907), 120 S. W. Rep. 790; *Wal-
lace* v. *Hughes,* January 1909, 150 S. W. Rep. 696; *Per-
manent Committee of Missons* v. *Pacific Synod of Pres-
byterian Church,* 106 Pac. Rep. 401, 80 U. S. 729, 20 L.
Ed. 666, 24 Am. & Eng. Ency. of Law, 338; *Brown* v.
*Clark,* 116 S. W. Rep. 364; *Boyles* v. *Roberts,* April

Term, 1909, 222 Mo. 651; *First Presbyterian Church* v.
*First Cumberland Presbyterian Church,* 91 N. E. Rep.
769; *Mount Zion Baptist Church* v. *Whitmore,* 83 Iowa,
147; *Hale* v. *Everett,* 63 N. H. 9; *Nance* v. *Busby,* 91
Tenn. 305; *Bear* v. *Heasley,* 98 Mich. 279; *Mack* v. *Kime,*
129 Ga. 1; *Brown* v. *Clark* (Tex.), 116 S. W. 360; *Para-
ment Committeee* v. *Pacific Synod* (Cal.), 106 Pac. 395;
*Wallace* v. *Hughes* (Ky.), 115 S. W. 684; and has been
held invalid in *Landrith* v. *Hudgins* (Tenn.), 120 S. W.
783; *Boyles* v. *Roberts,* 222 Mo. 613; *Ramsey* v. *Hicks,*
(Ind. App.), 89 N. E. 597; *General Assembly of Free
Church of Scotland* v. *Lord Overtoun,* Law Rep. Appeal
cases, p. 612; *Watson* v. *Jones,* 13 Wall, 679, 20 L. Ed.
666; Cyc. 1140; Cyc. 1141, citing 92 Fed. 214; *Dayton*
v. *Carter,* 206 Pa. St. Rep.; *Winebrenner* v. *Colder,* 43
Pa. 244; Schnore's Appeal, 67 Pa. 138; *Checher* v.
*Shiray,* 163 Pa. 534; *Schlichter* v. *Keiter,* 156 Pa. 119;
*German Reform Church* v. *Seibert,* 3 Pa. 282; *O'hara* v.
*Slack,* 90 Pa. 477; McAuley's Appeal, 77 Pa. 397 (27 P.
F. Smith, 397); *State ex el.* v. *Watson,* 45 Mo. 183;
*Pounders* v. *Ash,* 44 Neb. 672, 63 N. W. 48, and see
*Lamb* v. *Kane,* 14 L. R. A. 518; *First Presbyterian
Church of Louisville* v. *Wilson,* 77 Ky. (14 Bush.) 252;
see, also, *Wilson* v. *John's Island Presbyterian Church,*
2 Rich. Eq. 192, 24 L. R. A. N. S. 692.

Argued orally by *W. C. Caldwell* and *W. B. Lamb,* for
appellants, and *Jno. M. Gant* and *C. H. Alexander,* for
appellees.

SMITH, J., delivered the opinion of the court.

The questions here involved which grow out of the
union of the Cumberland Presbyterian Church and the
Presbyterian Church, U. S. A., have been passed upon
by ten supreme courts, each of them rendering a lengthy
and well-considered opinion thereon, so that the discus-
sion comes to us almost, if not fully, exhausted. In
*Landrith* v. *Hudgins,* 121 Tenn. 556, 120 S. W. 783, and

*Boyles* v. *Roberts,* 222 Mo. 613, 121 S. W. 805, the contention of appellants was upheld; and in the cases of *Mack* v. *Kime,* 129 Ga. 1, 58 S. E. 184, 24 L. R. A. (N. S.) 675; *Brown* v. *Clark,* 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670; *Ramsey* v. *Hicks* (Ind.), 91 N. E. 344, 30 L. R. A. (N. S.) 665; *Presbyterian, etc.,* v. *Cumberland, etc.,* 245 Ill. 74, 91 N. E. 761; *Wallace* v. *Hughes,* 131 Ky. 445, 115 S. W. 684; *Permanent Committee of Missions* v. *Pacific Synod,* 157 Cal. 105, 106 Pac. 395; *Sanders* v. *Baggerly* (Ark.), 131 S. W. 49, and *Harris* v. *Cosby* (Ala.), 55 South. 231, the contention of appellees was upheld.

The property here in controversy is not held under a deed by which it is devoted to the teaching, spread, or support of any specific form of religious doctrine or belief, but under a deed which simply conveyed it for the use of the Cumberland Presbyterian Church at West Point, Miss. The question we are called upon to determine, therefore, is simply which faction is the true representative or successor of the Cumberland Presbyterian Church at West Point, Miss., as the same was constituted prior to the schism therein caused by the union of the Cumberland Presbyterian Church with the Presbyterian Church, U. S. A. In order for us to do this, it is only necessary that we ascertain whether the union of the two churches was valid. If so, appellees are entitled to the property; if not, appellants are entitled thereto. The validity of this union is purely an ecclesiastical question, involving the doctrine, discipline, ecclesiastical law, rule, and custom of the Cumberland Presbyterian Church. Such questions this court will not for itself determine, even where property rights are involved, but will accept the decision thereof by the highest ecclesiastical authority of the church. *Mt. Helm Baptist Church* v. *Jones,* 79 Miss. 488, 30 South. 714; *Smith* v. *Charles,* 24 South. 968.

This rule is supported by numerous decisions of other courts, but we will refer only to the leading case of *Watson* v. *Jones,* 13 Wall. 679, 20 L. Ed. 666, and to the cases hereinbefore cited as upholding appellee's contention. In *Watson* v. *Jones* the court, speaking through Mr. Justice Miller, said: "In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that these decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for. Nor do we see that justice would be likely to be promoted by submitting those decisions to review in the ordinary judicial tribunals. Each of these large and influential bodies (to mention no others, let reference be had to the Protestant Episcopal, the Methodist Episcopal, and the Presbyterian Churches) has a body of constitutional and ecclesiastical law of its own, to be found in their written

organic laws, their books of discipline, in their collection of precedents, in their usage and customs, which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own. It would therefore be an appeal from the more learned tribunal in the law, which should decide the case, to one which is less so." The best discussion of the other side of this question will be found in the scholarly opinion of Mr. Justice Neil in *Landrith* v. *Hudgins, supra.*

It may be that cases may arise wherein the decision of the ecclesiastical tribunal is so palpably erroneous, or so manifestly in excess of its jurisdiction, that the civil courts ought to decline to be bound thereby. Such, however, is not the case here, and consequently we are not called upon to express an opinion thereon. Under the Presbyterian system of ecclesiastical government, the highest authority charged with the determination of the matter here in controversy is the General Assembly. Its decision as to the validity of this union, therefore, will be accepted by this court, and the property in controversy given to the faction adhering thereto.

*Affirmed.*