## ALLEN *v.* ROBY ET AL.

### [67 South. 899.]

1. RELIGIOUS SOCIETIES. *Pastor. Selection. Dismissal. Doctrine. Courts.*
   Where the manual of the Baptist church on the subject of selecting pastors, declared that they shall be chosen by election as the free choice of the people in each individual church, and that each Baptist church was independent, a statement in the manual that in giving a call, the church usually appointed a committee, notice being given for several Sundays, and that a three-fourths vote of all present at the meeting should be deemed essential to the call, coupled with the remark that no prudent man would accept a call on anything less, cannot be considered as prescribing the method of calling pastors, and a bare majority is sufficient.

2. RELIGIOUS SOCIETIES. *Pastors. Dismissal.*
   Where the relation of pastor and church is once formed, the relation can be dissolved by no external authority, civil or ecclesiastical, but by the mutual consent of the parties themselves.

3. RELIGIOUS SOCIETIES. *Doctrines. Courts.*
   The courts will not interfere to determine questions involving doctrines or government of a Baptist church.

APPEAL from the chancery court of Attala county.
HON. J. F. McCOOL, Chancellor.

Suit by Calvin Roby and another against T. H. Allen. From a decree granting a perpetual injunction, defendant appeals.

The facts are fully stated in the opinion of the court.

*S. L. Dodd* and *R. H. & J. H. Thompson,* for appellant.

The proposition that a majority vote is or is not sufficient to elect a pastor presents a question not of civil but of ecclesiastical or church law, and should not have been decided by the court below and there is no better authority for our contention than the case

of *Smith* v. *Charles, supra,* and the rule is fully recognized in *Mount Helm Baptist Church* v. *Jones,* 79 Miss. 488.

Even if appellant was not the pastor of the church he should not have been enjoined from preaching in its house of worship at the suit of a majority of its officers and members, the majority desiring him to preach. Each Baptist church is separate and independent from all others, a fact judicially known we think, as well as shown by the extracts copied into the record from Hiscox's New Directory, a compilation of Baptist laws.

A case very much in point arose in and was decided by the supreme court of Illinois in 1872. There the church was designated as the Independent Presbyterian Church, having a government similar to that of the Baptist church. The suit, like this one, was to restrain a preacher from longer officiating as the pastor of a church. It appeared that the church had no connection with any religious denomination, having a superior church court; that it was governed by its own rules and customs, as are all Baptist churches. One of the customs of the church was to elect a pastor every year. The defendant was elected for four successive years and accepted the calls. After the last election the church session and trustees decided not to retain him; but he declined to leave. The trustees, claiming that they had sole power to employ a minister, sought by injunction to restrain the preacher from acting as pastor. On the trial it was made to appear that the trustees did not have the sole power of employing a minister and that the defendant remained in obedience to the vote of a majority of the church whose wishes according to the usages of the church should control. The court held that the injunction could not be maintained. *Trustees of Independent Presbyterian Church* v. *Proctor,* 66 Ill. 11.

This case (66 Ill. 11.) further decides that the statute of frauds is not involved; that it is immaterial whether or not the preacher has an enforceable contract with the church.

The trustees of the church, appointed to hold the title of its real estate, have by reason of their trusteeship nothing to do with any of the affairs of the congregation or with the property itself. *Mazaika* v. *Kranczunas,* 229 Pa. 47, 77 Atl. 1102, 31 L. R. A. (N. S.) 686. This is in exact harmony with Baptist doctrine, Church Manual, pp. 38, 39, 40, (transcript pp. 85, 86) and with the law of the land generally. 24 Am. & Eng. Ency. of Law, 335.

*Thomas Land,* for appellees.

The contract of a preacher is like any other contract, and bears the same legal construction as all other contracts. See 20 Ency. of Law (1 Ed.), page 787, to wit: "A minister engaged for a given time is entitled to be retained unless he loses the right by some fault of his own. He may be dismissed for good cause shown, but not arbitrarily; there is no legal distinction between a contract with a minister and his congregation and any other civil contract for personal services. See *Congregation of the Children of Israel* v. *Peres,* 2 Coldw. (Tenn.) 620." In 20 Ency. of Law (1 Ed.), page 785: "Until the acceptance of the call by the candidate, the pastoral relation is temporary only, and no permanent obligation rests upon the congregation to pay him his salary for any longer time than they receive his services." And second Editorial of 24 Ency., pages 333 & 334: "The assent of the trustee to employ the pastor, and it is the right, if not the duty of the trustees to refuse the call of the pastor, that will destroy the harmony of the congregation." "And the call of the pastor, must be accepted, and if not, the church or congregation refuse to ratify it." "And can withdraw

their call." "And unless the salary of the pastor is legally fixed, it is the duty of the trustees to hold or withhold their ratification of the salary and call." 24 Ency. of Law (2d Ed.), page 335, as to use of Church: "When the governing authority of a denomination has deprived a pastor of his authority to officiate, he can be enjoined from using the property, and he may be excluded by the trustees." second Editorial of 24 Ency. Law, pages 336 and 337: "The courts of the country will protect the trustees against the pastor, the members of the church, or strangers from intrusions on the property against their will." "The deacons are merely ecclesiastical officers and have nothing to do with the temporal or property rights of.the church."

And the rules were carried out in strict conformance to this law and rules of this church and entered on the minutes of the church for the year of 1910, but after that time, as charged in appellees bill and testified to by Allen, he never had a contract with the membership of this church for the years of 1911 and 1912. And he did not accept the call of 1911 on October 22, for the year 1912, but continued on with his temporary employment, that was forced upon this congregation by his tenacious impertinence; that was characterized by his utter disregard for the unity and spiritual welfare of this congregation, and all of this was done by Allen, with due notice of the failure of this congregation to fix a salary for the year of 1912, and finding that he was deposed as the minister of this church, what did he do? He told them, that all the imps of Satan could not stop him, and that he was so many inches across the breast, and wore a No. 12 shoe, and that this congregation must not fool with Uncle Tom. This motion to table his call for 1912, appears upon page 237 of the church, and page 88 or 89 of the record.

"The pastoral relation cannot be dissolved only by agreement, except such as loss of character for purity

of morals on the part of the minister, as unfits him for performing his sacred duty and functions: See first Edition of 20 Ency. of Law, page 787, and Note 5, and the cases cited: *Avery* v. *Tyrinham,* 3. Mass. 182, 3 Am. Dec. 105, by Parke and Associates. And second Editorial of 24 Am. & Eng. Ency. of Law, p. 336, under the subject "Removal" and notes to this subject. Which is the law in this case, as shown by this record.

REED, J., delivered the opinion of the court.

This is a suit in chancery by appellees, two of the trustees of the Kosciusko Colored Baptist Church, against appellant, pastor of that church, for injunction restraining appellant from entering the church and preaching to the members. A temporary injunction was granted, and upon final hearing on bill, answer, and evidence was made perpetual.

Appellees charged in their bill that appellant had preached unsound doctrine, fomented strife, and was immoral and unworthy to be pastor, and that he did not have legal contract with the church, as pastor, but held the position unlawfully and forcibly. We do not find that appellant was ever arraigned or proceeded against by the congregation on the charges that he was guilty of wrong conduct and was unworthy. On the other hand, there is considerable testimony from members and leading officials of the church exonerating him therefrom. It is in proof that there are seven deacons, who had charge of such temporal affairs of the church as need attention, and appellees were two of these. The province of trustees is quite restricted in the church government, hardly extending to the bringing of suit such as this, and it may be that appellees intended to proceed in this case as deacons rather than trustees. They do not show, however, any action by the members of the church authorizing or directing the institution of this suit.

The proof clearly shows that appellant was properly chosen pastor of the church. The minutes of October 24, 1909, contain the following:

"On motion that Rev. T. H. Allen, of Pickens, Miss., be pastor for 1910. Carried unanimously."

The salary to be paid him was then properly fixed. It is in testimony that he continued for 1911 as pastor without question. The minutes of a meeting held October 22, 1911, contain the following:

"By majority of votes it was declared that Rev. T. H. Allen be pastor for 1912."

The government of the Baptist church is with its members. Its form of government is congregational and democratic. Each church is a distinct organization, independent of others. The members of the church have full power to call a pastor and make all necessary agreements with him. We learn from Hiscox's New Directory, introduced and used in the evidence and brought up with the record, being a manual outlining the polity, faith, and practice of the Baptist denomination, that an essential part of the independence of the churches is the right to choose their pastors and teachers, and that no individual or combination of men can appoint pastors over them; that no man is to be a pastor until "he has been chosen by a majority vote" of the church calling him.

It is argued by appellees that the appellant was not legally chosen pastor, because it is not shown that his election was by a three-quarters vote of the members. They rely to sustain their position, upon the following quotation from Hiscox's New Directory, page 108, note 4:

"In giving a call, the church usually appoints a meeting for that express purpose, notice being publicly given two Sundays in succession, the purpose of the meeting being distinctly stated in the notice, and a three-quarters vote of all present at such meeting should

be deemed essential to a call. Certainly no prudent or self-respecting man would accept a call on anything less than that.''

This text is taken from a note under the general subject of church officers, and we do not see that it is a mandatory provision. It seems to us to be in the nature of a recommendation. We notice that it is said that the church "usually" proceeds in this manner. Then the statement that a prudent man would not accept a call on a smaller vote indicates that all of this is a matter of advice only.

This view is confirmed when we note the provision above referred to in the main text of Hiscox's Directory, pages 98 and 99, on the general subject of how pastors are obtained, that they are chosen "by election, as the free choice of the people, in each individual church," and that the members "may ask or accept advice; but no man is a pastor to any people until he has been chosen by a majority vote of that church.''

We take the following provision, relative to the termination of the pastorate, from page 101 of the Directory:

"There is no power that can compel a church to accept a pastor or a pastor to accept a church. The relation is formed by mutual agreement between them. And, when once formed, the relation can be dissolved by no external authority, civil or ecclesiastical, but by mutual consent of the parties themselves.''

There is abundant evidence from witnesses testifying that the Kosciusko Church is governed by majority rule. It is in testimony that only a few members were in accord with appellees in their opposition to appellant, and that the majority were favorable to him. We do not find in the proof that the relation of pastor and congregation was dissolved by any proper action of the membership. This was necessary to terminate the pastorate.

The courts will not interfere to determine questions involving doctrines or government of a Baptist church. *Baptist Church* v. *Jones,* 79 Miss. 488, 30 So. 714; *Windham* v. *Ulmer,* 102 Miss. 491, 59 So. 810; *Smith* v. *Charles,* 24 So. 968. The chancellor erred in making the injunction perpetual.

Reversed injunction dissolved, and bill dismissed.

*Reversed and dismissed.*