## Edwards *et al. v.* De Vance *et al.*\*

(Division A. March 16, 1925.)

[103 So. 194. No. 24357.]

1. Injunction. *Criminal proceedings not enjoined, though groundless, except certain repeated prosecutions under void statute.*

    A court of equity will not enjoin the institution of criminal proceedings, even though the same may be groundless, except in a limited class of cases wherein the exercise of property rights are sought to be interfered with by repeated prosecutions under a void ordinance or statute.

2. Religious Societies. *Courts will not decide dispute between two persons as to which was elected deacon of church.*

    The office of deacon of a Baptist Church is purely ecclesiastical, and over such an office and election thereto the courts have no control, and therefore will not decide a dispute between two persons as to which of them was elected by the church to such an office; that being a question which the church itself has the sole right to determine.

\*Headnotes 1. Injunctions, 32 C. J., Section 443; 2. Religious Societies, 34 Cyc., p. 1131, 1133 (1926 Anno).

Appeal from chancery court of Warren county.

Hon. E. N. Thomas, Chancellor.

Suit by Jesse W. Edwards and others against Henry De Vance and others tried with suit by J. H. C. Henry to restrain certain defendants from interference with discharge of duties as pastor of the King Solomon Baptist Church of Vicksburg, Miss. Before trial, J. H. C. Henry died, and was succeeded as pastor by Henry De Vance. From a decree perpetuating a preliminary injunction, issued on the bill filed by J. H. Henry, and dissolving a preliminary injunction on the bill in the suit by Jesse W. Edwards, an appeal is taken. Decree as to injunction issued on bill filed by J. H. C. Henry reversed,

and bill of complaint dismissed, and, as to injunction on bill filed by Edwards and others, affirmed.

*Anderson, Vollor & Kelly,* for appellants.

Taking the testimony in its entirety, the conclusion must be that this meeting held on March 28, 1922, presided over by the Chief of Police, did not and could not express the calm judgment of the members of the church; that many persons were present who were not members of the church and who were not entitled to vote, and who did vote in matters pertaining to the affairs of the church. That a roll call of the members was also necessary in order to ascertain the true will of the church members, and that every act done and performed in such confusion and disorder could have no binding or legal effect whatever, and be binding upon any of the members or deacons of the church.

The chancellor in rendering the decree complained of in this court was undoubtedly moved to his decision under the rule of law so faithfully observed by all the courts, that the civil courts will not interfere with decisions rendered by ecclesiastical tribunals unless property rights are involved, but nowhere in this case can it be found where a rule or decision of the true religious organization of the King Solomon's Baptist Church was made, and the parties appellant stand in the position of parties who were unlawfully and improperly expelled from the affiliation with their church, and the governing rules of law for their relief are found in the case of *Natfield* v. *Delong,* 156 Ind. 207, 51 L. R. A. 751, which case holds "that an injunction is the proper remedy to protect a person's standing in the community and prevent an injury for which there is no adequate remedy at law, by an attempt of tribunal without jurisdiction to expel him from a church." And in the case of *Bouldin* v. *Alexander,* 139 L. Ed. 71, it is held that inquiry may be made by the civil court as to whether or not the resolution of expulsion was the act of the church, or of persons who

were not of the church, and consequently could not ex-communicate others. In the case of *Smith* v. *Perdigo,* 145 Ind. 407, 32 L. R. A., 843, Justice McCABE lays down the rule that: "It must be the act of the church, and not the act of persons who are not of the church."

Again it must be insisted that the meeting held at the instance of Henry, the pastor, who summoned Catholics, Methodists, members of the other churches, sinner men and sinner women, as designated, all of whom accepted the signals made by him when the roll call was asked for, rejected and denied; the people hostile, disorderly and belligerent and all of this, not only in defiance of the rules of order regulating deliberative bodies, but in defiance of the commands of the chief law officer of the city in which the meeting was held.

Upon the facts and law hereinbefore quoted we submit that the decree of the chancellor should be reversed and a new trial granted to the appellants.

Brief of *Anderson, Vollor & Kelly,* for appellants, in response to questions from the court.

In compliance with the question raised by the court under an order heretofore rendered as to the question of the right of the lower court to enter a valid decree making the injunction sued out at the instance of J. H. C. Henry perpetual, Henry the pastor having died before the entry of such order, we must confess that we entirely overlooked the point of the lower court having the right to enter a valid and binding decree making the injunction sued out by J. H. C. Henry perpetual until it was brought to our attention by the court. We unhesitatingly answer that it was without the power of the trial court to enter a valid decree perpetuating the injunction against these appellants. The relief sought by Henry was altogether personal unto himself, and in his bill of complaint he stated and alleged that he was the pastor of the church; that the defendants against whom he made complaint were attempting to remove him, had

asked for his resignation; that at a meeting held by them without authority in law they attempted to remove him and had sent him a communication to that effect; that he had called a meeting the purpose of which was to determine whether he should resign or not; that such a meeting was held,.and that the members refused to remove him, and that afterwards the defendants against whom he complained filed affidavits against him for trespass and were prosecuting him in the justice of the peace court of T. E. Halford; that his property rights involving his salary and the right to reside in the parsonage was being affected. No other member of the church joined him in his bill, and it was a purely personal matter, with which no other person was concerned, that he sought injunctive relief against the defendants in that case who are now the appellants in this court. 14 R. C. L. 310.

At the death of Henry the cause had been pending for eleven months, and with his death he could no longer be the pastor of King Solomon's Baptist Church. He could not reside in the parsonage, his salary of sixty dollars per month could not, in any way, be interferred with or jeopardized; the defendants could not prosecute him further for trespass in the justice court of the county, and the affidavits for trespass were abated. In fact, the personal complaints made by Henry against the defendants in his bill all died with the complainant, and when the court perpetually enjoined the defendants, who are appellants in this court, he enjoined them from doing the very acts that God Almighty prevented them from doing seventeen months prior to the time the decree of the lower court was entered. In this case counsel for appellees obtained a decree from the court perpetuating an injunction that a "Higher Power" most effectually perpetuated when he called the original complainant in this case to what is to be hoped a less disturbed position than he occupied as pastor of King Solomon's Baptist Church here on earth.

It was not to be expected by the defendants that "the courts would do a vain thing as Justice TERRALL stated in *Yacona Mills* v. *Gibbs et al.*, 27 So. 647.

*Henry, Canizaro & Henry,* for appellees.

It is admitted, and the chancellor so decided, that Rev. Henry was properly elected and had filled the office for more than twenty years. The government of the Baptist faith rests only in the congregation. The decisions of the congregation are final and no ecclesiastical tribunal can reverse them. 34 Cyc. Religious Societies, 1147-48. See National Baptist Pastoral Guide, 10, 11, 13, 14; Allen v. Roby, 109 Miss. 113; 34 Cyc. 1148.

ACTIONS CONCERNING RIGHT TO OFFICE—(1) by Minister. Equity will interfere to protect a minister in the enjoyment of his office only when his contract and relations with the church are such as to confer on him a property right in the office. Upon this ground, however, it has been said that an injunction will lie to prevent an unwarranted removal of a priest or bishop, to restrain the governing body from hindering a minister wrongfully removed, in the exercise of his office; and to enjoin the trustees of a church from refusing to receive the regularly appointed minister and from denying him the use of the church edifice.

Appellants in their answer do not deny that a majority of the congregation voted to retain Rev. Henry; but they attempt to overcome the force and effect of the vote by saying that the business meeting of March 28th was unlawful. Our answer to this contention is that if we admit for the sake of argument that the meeting was not properly held, that would not help the appellants, since:

First, they participated in the meeting as called by the Rev. Henry, and having exercised the right to vote to dismiss the pastor, they are now estopped from attacking the validity of the meeting because they lost at the election; Second, if the meeting was unlawful, and

even if the appellants were not estopped, nevertheless the unlawful meeting could be considered as no meeting at all and the relation of Rev. Henry as pastor of the church remains undissolved; Third, the appellants evidently let their anger get the better of their judgment. When they discovered that they were in a hopeless minority at the meeting on March 28th, they announced that they would resign as deacons of the church. Their resignation being accepted and their successors being elected they would be held to have recognized the meeting as a valid one, and they were no longer officers in the King Solomon's Baptist Church. Any action that they may have taken thereafter would be of no validity. Until Rev. Henry would have been dismissed by a majority of the congregation, his relation as pastor of the church remained the same.

## II.

We respectfully submit that the second injunction by Jesse Edwards and his co-appellants was without authority of the law and without equity. They should have insisted on the dissolution of the first injunction. Their remedy was there complete and their rights could have been fully adjudicated.

The second suit was not maintainable, and certainly the bill was properly dismissed. *Thompson* v. *Johnson*, 78 S. (Ala.) 91 Judgment—Subsequent Purchaser—Effect; Injunction 22 Cyc. 780; *Martin* v. *O'Brien*, 34 Miss. 31, See 111 S. E. 656.

If we examine the right of Jesse Edwards and his co-appellants to maintain an injunction from another point of view, the same conclusion should be reached, since those deacons had no property rights on which to base their suit for injunction, whether or not Rev. Henry was properly retained by the congregation, and whether or not the congregation refused to recognize Jesse Edwards as a deacon is an ecclesiastical question. It only involves a doctrine of government of the Baptist church and the civil court will not take cognizance of it.

The courts will not interfere to determine questions involving doctrines of government of a Baptist Church. *Baptist Church* v. *Jones,* 79 Miss. 488; *Windham* v. *Ulmer,* 102 Miss. 491; *Allan* v. *Roby,* 109 Miss. 107; *Roundtree, et al.* v. *Fletcher,* 109 Miss. 830.

· Brief for appellees in response to question from the Court.

The question of this Honorable Court to counsel for appellant is as follows: "There seems to lie at the threshold of this cause a question not raised or argued by counsel, and that is: 'Did the suit wherein J. H. C. Henry was the complainant and Jesse W. Edwards et al. were the defendants, abate on the death of Henry?' Or, to express it differently: 'Could the court below enter a valid decree making the injunction granted in that case perpetual after the death of the sole complainant therein?'"

Our answer for appellees to the inquiry of this Honorable Court as to whether or not the first bill, the one filed by the Rev. Henry, abated on his death shall be "No," and we have reason for that answer. The court will observe by inspection of appellant's original brief that the very first line of their brief begins: "This is a double-barrel church litigation," which conclusively shows how the two cases were dealt with before the chancellor and how they were treated by both sides. Again, counsel for appellant say: "And the court at the trial heard and considered all questions involved on the bill and answers in both cases—"

The pleadings, therefore, presented to the chancellor are questions involved in both suits not only without objection but by an agreement, as is shown by the pleading and as was accepted by counsel for both appellants and appellee. To absolutely show by way of conclusive demonstration see the decree of the chancellor, record page 285.

It is manifest to the court, of course, that the King Solomon Baptist Church's property was not the property of Rev. Henry, it was the property of its members

and that property of necessity was for the benefit of the great majority of the members of said church and not for the benefit alone of Rev. Henry. The drafters of the original bill of Rev. Henry would never have embodied in the Henry suit any prayer unless it was for the purpose of protecting the church property and for the purpose of protecting the great majority of their rights; legal and equitable and thereby protecting their interest in the property of the church.

The Henry injunction part was a matter personal to Rev. Henry, nevertheless he was acting for and in behalf of the majority of the Members of the King Solomon Baptist Church to prevent the dissenting minority from creating strife and dissension among the members and from causing irreparable injury both to him (Henry) and the members of the congregation of the said church. This Honorable Court will readily see that the decree of the chancellor so far as bears on the Henry injunction does not in general terms perpetuate the injunction. It does not in any manner have reference to any restraining of Edwards or his co-appellants from interferring with Rev. Henry. It does not undertake to do that, it is limited only so far as it may apply to the rights of the parties then before the court and if it did not apply to the rights of the parties who were before the court, and parties who have been brought into court by the allegations, action and conduct of the appellant then they are not restrained of anything and the perpetuating of the Henry injunction means nothing. If we resort to the common-law rule without regard to the provision of section 724, Code of 1906, then the appellants are in no better position for the rule is well stated in 1 C. J. 155. 1 C. J. 222, Waiver and Estoppel; page 179 (3), Injunction; page 224, Compelling Revival or Dismissal; *McKey* v. *Torry,* 28 Miss. 78; *Christian Co.* v. *Dantzler Co.,* 78 Miss. 75; Gould on Plead., sec. 61, ch. 4; Code 664; *Rice* v. *Shute,* 5 Bur. 2613; *Boson* v. *Tanford,* 2 Salk., 440 note a.

We respectfully submit that the case should be affirmed and the additional attorneys' fee should be allowed the appellee.

Argued orally by *P. C. Canizaro,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree perpetuating one and dissolving another injunction and awarding damages for the issuance thereof.

In May, 1922, J. H. C. Henry exhibited an original bill against Edwards, Paxton, Watson, and Judge from the allegations of which it appears that Henry was "the duly qualified, elected, and presiding pastor of the King Solomon Baptist Church (colored) of the city of Vicksburg," and that Edwards, Paxton, Watson, Judge, and Williams then constituted the board of deacons thereof. On March 14, 1922, Henry was notified in writing by the board of deacons to appear before it on March 17th and tender his resignation as pastor of the King Solomon Baptist Church. He declined to do this, but stated that he would refer the matter of his resignation to the church at a regular meeting thereof. Without waiting therefor, an irregular meeting of the church at which only a small minority of the congregation were present was held in the churchyard on the 24th day of March, at which a resolution was adopted removing Henry as pastor of the church. Thereafter, at a regular meeting of the church, one hundred eighty-six members of the congregation voted to retain Henry as their pastor, and sixteen voted for his removal, whereupon Edwards, Paxton, and Judge resigned as deacons of the church; Watson, who was present, was removed, and their successors were elected. This action of the church was not acquiesced in by the faction thereof opposed to Henry, and it still seeks to prevent him from acting as pastor of the church; the method pursued therefor being the institution of a prosecution against Henry for trespass after each meeting of

the church in which he participated as pastor, the affidavits therefor being made by one of the defendants to the bill.

The bill prays for an injunction restraining the defendants therein from interfering with the discharge by Henry of his duties as pastor of the church. A preliminary injunction was issued. Before the cause came on for trial or any further action therein had been taken Henry died, and was succeeded as pastor by De Vance, who had theretofore been his assistant. Edwards, Paxton, Watson, and Judge then exhibited a bill of complaint against De Vance, the sexton of the church, and the persons who are now acting as its deacons under the election therefor hereinbefore referred to.

According to the allegations of this bill the meeting in the yard of the church at which the resolution was adopted removing Henry as pastor was regularly held, and the meeting at which he was retained as such was irregular, and the vote therein was not binding on the congregation for the reason that a large number of persons not affiliated with the church were permitted to participate therein, and the meeting was conducted in such a disorderly manner that it became necessary for the chief of police to be called in and to preside thereat. The resignation of the complainants in this bill as deacons of the church was denied, as was also the right of the defendants therein to act as deacons of the church. The bill filed by Henry was made an exhibit to this bill, which further alleges that the defendants therein are interfering with the discharge by the complainants of their duties as deacons of the church, and prays that they be enjoined from so doing. A preliminary injunction was also issued on this bill.

While no order appears therefor, the two cases were tried as one on bills, answers, and proof, and a decree was rendered perpetuating the injunction issued on the bill filed by Henry and dissolving the injunction issued on the bill filed by Edwards, Paxton, Watson, and Judge.

No question was raised in the court below growing out of Henry's death nor in this court until after the attention of counsel had been called by the court thereto, and, since the decree perpetuating the injunction issued on the bill filed by Henry against the board of deacons must be reversed on another ground, we will pretermit any discussion of the effect of Henry's death thereon.

It is well settled that a court of equity will not enjoin the institution of criminal proceedings, even though the same may be groundless, except in a limited class of cases wherein the exercise of property rights is sought to be interferred with by repeated prosecutions under a void ordinance or statute, and we are presented with no such case here. *Creighton* v. *Dahmer,* 70 Miss. 602, 13 So. 237, 21 L. R. A. 84, 35 Am. St. Rep. 666; *Davis* v. *Fortenberry,* 114 Miss. 294, 75 So. 119. While the bill prays that the defendants therein be enjoined from interferring with Henry in the discharge of his duties as pastor, the only acts by which it is alleged that this interference is attempted to be made effective and which are sought to be specifically enjoined are the institution of criminal proceedings. The injunction issued on this bill should have been dissolved and the bill dismissed.

Coming now to the case presented by the bill filed by Edwards, Paxton, Watson, and Judge it will be observed that it is not a case wherein one faction of a church has excluded another from participating in the use and occupation of church property, but simply a case wherein there is a controversy as to who are the deacons of the church.

The office of deacon is purely ecclesiastical, and the incumbent thereof is subject at all times to the control of the church; the only persons entitled thereto being those the church recognizes as such. Over the office and elections to it the courts have no control, and it is here wholly immaterial whether the election of any of the parties hereto was illegal; that being for the determination of the church, and those of the parties hereto who are rec-

ognized by the church as such have the right to discharge the duties of deacon thereof.

It follows from the foregoing views that the decree of the court below in so far as it deals with the injunction issued on the bill filed by Henry will be reversed and that bill of complaint will be dismissed; and, in so far as it deals with the injunction issued on the bill filed by Edwards, Paxton, Watson, and Judge, it will be affirmed. Costs here and in the court below to be apportioned accordingly.

*Affirmed in part and reversed in part.*