CONIC *v.* COBBINS.

In Banc. Jan. 23, 1950.

No. 37303 (44 So. (2d) 52)

L. F. Easterling and J. E. Skinner, for appellant,

John G. Burkett and M. L. Mhoon, for appellee,

**McGehee, C. J.**

This appeal was granted with supersedeas from a decree of the chancery court whereby the complainant O. B. Cobbins was declared to be entitled to officiate as the presiding bishop of the southcentral diocese of the Church

of Christ (Holiness), U. S. A., in the place and stead of the incumbent bishop M. R. Conic, against whom the suit was filed on December 30, 1947.

The defendant Conic was elected and consecrated as a bishop and placed in charge of the said diocese in August, 1947, by the action of the national convention of the church at Chicago, Illinois, to succeed H. R. McInnis, who had superseded the complainant Cobbins by order of the Board of Bishops in May, 1947, pending the election of a new bishop for the diocese at the approaching convention in Chicago. The disposition of the controversy as to whether the complainant Cobbins, who had been elected bishop at the national convention in St. Louis in August, 1945, and placed in charge of this diocese, should be replaced by someone else pending the holding of the 1947 convention at Chicago, was referred to the board of bishops in May, 1947, by the senior bishop of the church, Charles P. Jones, of Los Angeles, who was the founder of the Church of Christ (Holiness) movement in 1896 (originally known as the Church of God). Mount Helm Baptist Church et al. v. Jones et al., 79 Miss. 488, 30 So. 714.

Under Chapter 5, Article 1, Section 1 of that part of the church manual relating to the Government of the church, it is provided: "The national convention is the supreme authority for . . . making the laws for the government of the church." Article 3, Section 1, of the same chapter, provides that: "The national convention shall elect bishops, one of whom shall be designated as senior bishop. The executive power of the national convention shall be vested in the senior bishop."

The complainant challenges the validity of the election of Bishop Conic on the ground, first, that the national convention at which the said defendant was elected at Chicago in August, 1947, was illegally held, and, second, because the complainant was not offered the opportunity to be heard or granted a trial before he was superseded

by H. R. McInnis, who was thereafter succeeded by the defendant Conic, as aforesaid.

The contention that the convention at Chicago was illegally held is based upon the fact that at the 1946 convention a recommendation of the "Committee on Time and Place" was adopted whereby the convention for 1947 was to be held at Los Angeles. It seems that at the instance of Senior Bishop Jones, who had at all times been the president of the annual national conventions and was the senior bishop and executive head of the church since it was founded, an extra or special session of the national convention was held at Jackson, Mississippi, on May 13, 1947, and that a majority of all of the members of the convention voted to change the time and place for the regular annual convention from Los Angeles to Chicago. The complainant appeared at the extra or special session at Jackson, qualified to participate therein by the payment of his membership enrollment fee, but declined to take any part in the proceedings on the ground that such extra or special session was called at the instance of the senior bishop without any authority under the constitution and by-laws of the church, as contained in the church manual, and he even disputed the fact that Bishop Jones was senior bishop of the church at the time. He also appeared at the convention at Chicago, but declined to take part in the work of the convention, and went on to Los Angeles where one Bishop Wm. A. Washington undertook to hold the annual convention in opposition to the one held in Chicago, and where it is said that less than 10% of approximately 200 churches belonging to this religious organization were represented.

In fact, prior to the extra or special session of the convention in Jackson on May 13, 1947, both Bishop Washington and the complainant Cobbins had defied the authority of the senior bishop, denounced the action of the church in undertaking to hold an extra or special session of the convention and the annual convention at Chicago,

instead of Los Angeles, and declared that these proposed conventions were repudiated, not recognized, and were not to be held or attended, the manifesto of the complainant Cobbins being issued under the caption of "Notice Extraordinary" and addressed to all of the bishops, officers, ministers, leaders, and members of the churches of the diocese, and declaring that he was "not favoring, but disrecognizing the call for the extra session of the national convention for May 13, 1947, at Jackson, Mississippi". Upon receiving a copy thereof, Senior Bishop Jones wrote to the complainant and, among other things, stated: "Remember, Son, I was to remove you at the last convention, but I did not because I was unable to attend, so you have served a little longer than you should have. I am expecting you to meet me at Jackson, Mississippi, on the 13th of May, . . .. Being president and senior bishop I have authority to call meetings if I so deem."

However, when the extra or special session convened on May 13th, Bishop Jones referred the disposition of the bishopric of the southcentral diocese to the board of bishops, which selected H. R. McInnis to supersede the complainant, pending the holding of the annual convention at Chicago in August, 1947, as aforesaid.

██ Thus it will be seen that the action thus taken in reference to the complainant Cobbins was a disciplinary measure, an ecclesiastical controversy, and over which the civil courts have no jurisdiction, unless some property rights of the complainant are involved, the courts being otherwise without jurisdiction to decide who is, or who ought to be, the presiding bishop of a diocese.

██ Moreover, the complainant is not in a position to contend in a court of equity that the defendant Conic is not entitled to hold the office of bishop on the ground that the national convention at which he was elected was held at a place other than that fixed at the previous annual convention in 1946, since the complainant was elected

as a bishop at a convention held in St. Louis, in 1945 after the time and place for the holding of such annual convention had been fixed by the 1944 convention to be held in Los Angeles, instead of St. Louis, the time and place therefor having been changed by order of the senior bishop. Nor is he in a position to contend that he was not afforded a trial or hearing either at the extra or special convention at Jackson on May 13, 1947, or at Chicago in August, 1947, since he was present at both conventions, qualified to participate therein and failed to do so, and denied the authority of the majority of the members at each of the conventions to hold the same, and was disputing their right to transact any business whatsoever.

As to the authority of the senior bishop to call, or cause to be called, either of these conventions in 1947 at the time and place where the same were held, it appears that Senior Bishop Jones had from time to time, over a period of more than 20 years, changed the time and place for the holding of the annual conventions, and had called extra or special sessions of the convention at his will and pleasure, and his action in that regard had been uniformly acquiesced in, by the church, its bishops, elders, ministers, board of bishops, executive councils, and all members of the convention without question. And, when the manual of the church containing its constitution and by-laws was revised and adopted by the annual convention at St. Louis in 1945, the action of the senior bishop in thus exercising his executive authority during the period of years and in the manner aforesaid was well-known to the members of the convention, and his action in that regard had established a usage and custom of the church in that behalf, and the convention is therefore presumed to have adopted the senior bishop's construction of his own power and authority as the executive officer and head of the church. If he is deemed to have been without such authority, then the very manual of church laws on which the complainant relies for maintain-

ing this suit was illegally revised and adopted at St. Louis in 1945, and no other edition of the manual was introduced and made part of the record, and we have no judicial knowledge of what the prior manuals may have contained.

The complainant by this suit also seeks an accounting from defendant Conic of the compensation received by the defendant during his incumbency of the office of presiding bishop of the diocese in question on the ground that the manual provides: ''Bishops are permitted to retain their 10% of all monies *raised by them* in their respective dioceses'' (italics ours), and he also seeks a discovery as to what books, records, and funds are in the hands of the defendant belonging to the diocese, and of which the complainant claims to be the custodian by virtue of having been elected as the presiding bishop. However, the complainant is not shown to have raised any part of the funds out of which the defendant Conic may have deducted the 10% for his own services, nor would the complainant be entitled to a discovery in a court of equity as to what books and records of the church were in the possession of the latter, and to have the same turned over to the complainant contrary to the action and wishes of the national convention in Chicago, which placed the same in the custody of the defendant.

In other words, we are of the opinion that there are no property rights of the complainant involved. such as to entitle him to invoke the jurisdiction of the civil courts in this cause as to the 10% claimed by him of the funds raised in the diocese, and it is shown that the remaining funds have been duly accounted for and distributed to the causes for which the same were collected. There is no claim that any of the books, records, and funds are being diverted to any other use than that intended.

There is presented the further ecclesiastical question of whether or not the complainant was entitled to officiate as bishop of the diocese at the time of the institution of

this suit in view of the fact that the local church of the diocese, of which he was a member at Jackson, Mississippi, had withdrawn from him the hand of church fellowship, and in effect excluded him as a member thereof prior to the filing of the suit, after ample opportunity had been afforded him for a hearing in regard to his defiance of the authority of the senior bishop and of the special and annual national conventions, and he took no appeal from the action of the local church in that behalf.

On the question of our authority to determine who ought to be the presiding bishop of the diocese, we call attention to the case of Edwards v. De Vance, 138 Miss. 580, 103 So. 194, 195, wherein the court said: ''The office of deacon is purely ecclesiastical, and the incumbent thereof is subject at all times to the control of the church; the only persons entitled thereto being those the church recognizes as such. Over the office and elections to it the courts have no control, and it is here wholly immaterial whether the election of any of the parties hereto was illegal; that being for the determination of the church, and those of the parties hereto who are recognized by the church as such have the right to discharge the duties of deacon thereof.''

In Grantham et al. v. Humphries et al., 185 Miss. 496, 188 So. 313, there was litigation between two factions in the Baptist Church. The question involved was the use of the church building and its records for religious worship. The chancellor dismissed the bill, and this Court said: ''We reach the same conclusion the chancellor did. The question involved is ecclesiastical and not one for the civil courts. The church authorities and such tribunals as they may set up for themselves are supreme in such matters. Their decision is final as to who shall be the pastor and other officers. Such disputes are ecclesiastical in their nature and the courts have no control over them. Windham et al. v. Ulmer et al., 102 Miss. 491, 59 So. 810;

Allen v. Roby, 109 Miss. 107, 67 So. 899; Edwards v. De Vance, 138 Miss. 580, 103 So. 194.''

But it is said that these cases are not applicable because they related to controversies in a Baptist church, which is a law unto itself in that it has no constitution and by-laws, as distinguished from the church in which the controversy now before us arose. However, the fact that the rule of the majority may prevail in a Baptist Church, whereas controversies in churches having a constitution and by-laws are to be settled according to such church laws, has no bearing on the question of whether or not the questions are ecclesiastical or civil.

But in the case of Carothers v. Moseley, 99 Miss. 671, 676, 55 So. 881, the question involved grew out of the union of the Cumberland Presbyterian Church and the Presbyterian Church, U. S. A., and this Court, in its opinion, said: ''The question we are called upon to determine, therefore, is simply which faction is the true representative or successor of the Cumberland Presbyterian Church at West Point, Miss., as the same was constituted prior to the schism therein caused by the union of the Cumberland Presbyterian Church with the Presbyterian Church, U.S.A. In order for us to do this, it is only necessary that we ascertain whether the union of the two churches was valid. If so, appellees are entitled to the property; if not, appellants are entitled thereto. The validity of this union is purely an ecclesiastical question, involving the doctrine, discipline, ecclesiastical law, rule, and custom of the Cumberland Presbyterian Church. Such questions this court will not for itself determine, even where property rights are involved, but will accept the decision thereof by the highest ecclesiastical authority of the church. Mount Helm Baptist Church v. Jones, [supra].''

Thus it will be seen that our Court has taken jurisdiction of church controversies where the *possession* of the

physical properties of the church is involved, but the Court has generally, if not uniformly, declined to pass upon an ecclesiastical question in order to determine how church property should be awarded, but has awarded the same in accordance with the decision of the ecclesiastical tribunal.

The Church of Christ (Holiness) U. S. A. is incorporated under the laws of the State of Mississippi, and, of course, would be a necessary party to this suit if its physical assets held in its corporate capacity were involved. Skyline Missionary Baptist Church et al. v. Davis et al., 245 Ala. 455, 17 So. (2d) 533; Bailey et al. v. Washington et al., 236 Ala. 674, 185 So. 172. But we do not pass on the question as to whether the church in its ecclesiastical capacity is a necessary party to the present suit, since it is unnecessary that we do so in view of the conclusion that we have reached.

 It is true that in the case of Cherry et al. v. Bivens et al., 185 Miss. 329, 187 So. 525, the Court held that a person is entitled to notice and hearing before being deprived of any of his rights, and that positions in fraternal, social or religious organizations are valuable rights of which holders cannot be deprived without notice and opportunity for hearing under Section 24 of the State Constitution of 1890, and the fourteenth amendment to the Constitution of the United States; that a person is entitled to redress for an injury sustained to his reputation as well as from any action affecting his property rights. That case, however, involved the rights of certain parties to officer in a Masonic lodge. The case presented no ecclesiastical question, and the decision was based primarily on the ground that the suit was one in equity and that the complainants had not come into court with clean hands. Anything said in the opinion that would tend to indicate that the civil courts should take jurisdiction in regard to the action of a church in expelling a member, etc., thereby affecting his reputation, was

unnecessary to the decision of the question involved, and is not controlling here. Most assuredly, the courts will not take jurisdiction of any and all acts of a church that may affect the reputation of its pastor or some of its members. The constitutional provisions above referred to do not require that the courts shall be open to hear ecclesiastical controversies even though the reputation of the litigant may be affected by the failure of a court to set aside the action of the ecclesiastical body. We are therefore of the opinion that under the proof contained in this record, the trial court should have dismissed the bill of complaint, instead of reinstating the complainant as bishop and retaining jurisdiction of the cause for the accounting and discovery; and therefore the decree appealed from is reversed and the bill of complaint is dismissed.

Reversed and bill of complaint dismissed.

**Lee, J.,** took no part in this case.