789 So.2d 120 (2001)
Milburn MALLETTE, Appellant,
v.
CHURCH OF GOD INTERNATIONAL, Dr. James D. Jenkins, Rev. Carl E. Allen, Rev. Garner E. (Bill) Allen, Rev. Pettis E. Brewer, Rev. James E. Gholson, Rev. Lenzy Evans, Rev. Bevon Joe Smith, Dr. Ray H. Hughes, Rev. David Lee Meadows, Rev. Troy Alvin Baggett, Rev. William L. Owens, Rev. Edward D. Bean and Rev. A. Lavelle Kelly, Appellees.
No. 2000-CA-00142-COA.
Court of Appeals of Mississippi.
June 26, 2001.
*121 William Michael Kulick, Biloxi, Attorney for Appellant.
Mark A. Nelson, David M. Ott, Sandra S. Mohler, Katherine L. Howie, Hattiesburg, Attorneys for Appellee.
Before McMILLIN, C.J., IRVING, and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. Reverend Milburn Mallette sued the Church of God International and others for various grievances, including defamation, after his ministerial licence was revoked. The Harrison County Circuit Court, holding that the ecclesiastical abstention doctrine barred a civil suit, granted summary judgment to the Church of God defendants. On appeal to this Court, we reversed and remanded and instructed the trial court to determine whether Mallette's defamation claim was beyond the protection of the ecclesiastical abstention doctrine. Mallette v. Church of God Intl., *122 NO. 96-CA-00161-COA, 704 So.2d 472 (Miss.Ct.App. December 16, 1997) (table). On remand, the trial court again granted summary judgment to the Church of God defendants. Mallette frames the sole issue for our review as follows:
THE TRIAL COURT ERRED IN ITS DECISION TO DISMISS MALLETTE'S COMPLAINT AND GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AFTER A MANDATE FROM THE FIRST APPEAL IN THIS CAUSE REQUIRED THAT MALLETTE BE ALLOWED TO DISCOVER INFORMATION RELEVANT TO ALLEGED INTENTIONAL TORTS.
Finding no error, we affirm.

FACTS
¶ 2. Milburn Mallette was pastor of the Church of God in Long Beach, Mississippi. A parishioner of the Long Beach Church of God sent a letter to the Church of God's State Overseer in which she confessed to having an extramarital sexual relationship with Mallette. The Overseer appointed an investigatory committee to explore the parishioner's allegations. Finding merit to the parishioner's charges, the investigatory committee recommended that Mallette be tried for "unbecoming conduct with the opposite sex." The Overseer appointed a three-member trial board to hear the charges.
¶ 3. The trial board set the trial for 2:00 p.m. on August 3, 1993, at the Biloxi Lighthouse Church of God. An orientation meeting was set for 10:00 a.m. the same day. The pastor of the Biloxi Lighthouse Church of God, Reverend Steve Weston, informed his congregation and his staff that the church would be closed on August 3 for "official processes not involving his church." Reverend Weston stated in his affidavit that he did not tell anyone the nature of the "official processes," and that the only people present in his church on August 3 were either involved in the trial or present at Mallette's request. The events which occurred at the Biloxi Lighthouse Church of God on that day, including the 10:00 a.m. orientation meeting, were solely related to Mallette's trial according to Reverend Weston.
¶ 4. During the orientation meeting, the letter which began the inquiry into Mallette's conduct was read to all present in the Biloxi Lighthouse Church of God. In addition to her confession of the affair, the parishioner quoted her friend, in whom she had confided, as having said: "He [Mallette] raped you." Mallette was found guilty of unbecoming conduct with a member of the opposite sex and his ministerial license was revoked. Mallette appealed to an appeal board. The appeal board reviewed and affirmed the trial board's decision.
¶ 5. Approximately one year after the trial board found him guilty, Mallette brought a lawsuit in civil court against the Church of God International, several individuals affiliated with the Church of God, the parishioner with whom he had the affair, her husband, and the woman quoted in the letter who made the rape comment. Mallette alleged that these collective defendants had defamed him. Specifically, Mallette alleged that the reading of the letter during the orientation meeting defamed him. He also claimed the Church of God defendants defamed him in other ways which were not connected to the reading of the letter.
¶ 6. The Harrison County Circuit Court granted summary judgment to the Church of God defendants, finding that the doctrine of ecclesiastical abstention forbade an exercise of jurisdiction from a secular court. On appeal to this Court, Mallette argued that the ecclesiastical abstention *123 doctrine would not shield the Church of God defendants from liability for their intentional torts. We reversed and remanded, finding that the record was not clear whether the Church of God defendants published defamatory statements outside the protection of the ecclesiastical abstention doctrine. We commented that on the record before us, only the letter read to the congregation raised a question. Mallette believed that if he were allowed to conduct discovery, he would be able to prove that the Church of God defendants defamed him and that their actions had no ecclesiastical justification.
¶ 7. After we remanded the case, Mallette moved to compel answers to the same interrogatories that he had propounded before the trial court first granted summary judgment. The Church of God defendants answered some of the interrogatories, objected to others, and again moved for summary judgment. Mallette submitted several affidavits in response to the summary judgment motion. In addition to affidavits of people who were present during the reading of the letter, most of whom were members of Mallette's family, Mallette offered his own affidavit in which he claimed: the reading of the letter was without church authority; he was falsely accused of obtaining a beer license for his convenience store; clients of his accounting business were told that he turned his clients in to the Internal Revenue Service in exchange for reward money; and a high ranking bank officer was told that Mallette was not creditworthy.
¶ 8. The trial judge ruled that the letter was read within the protection of the ecclesiastical abstention doctrine and again granted summary judgment to the Church of God defendants. The trial judge further commented that none of Mallette's discovery requests were reasonably designed to obtain evidence that the Church of God defendants published any defamatory material against Mallette.

LAW AND ANALYSIS

A. The letter
¶ 9. The Church of God disciplines errant ministers in obedience to the following instructions from Jesus to His apostles:
[I]f thy brother shall trespass against thee, go and tell him his fault between thee and him alone: if he shall hear thee, thou hast gained a brother. But if he will not hear thee, then take with thee one or two more, that in the mouth of two or three witnesses every word may be established. And if he shall neglect to hear them, tell it unto the church: but if he neglect to hear the church, let him be unto thee as an heathen man and a publican.
Matthew 18:15-17 (King James). Indeed, the Church of God requires that: "Prior to any formal trial or hearing [on charges brought against a Church of God minister], the state overseer shall, where possible, arrange a face-to-face meeting between the accused and the accuser, in keeping with the commands of Jesus in Matthew 18:15-17." Minutes of the 64th General Assembly of the Church of God, August 10-16, 1992, § 58(I)(B)(1). It was within the context of a "Matthew 18:15-17 meeting," held the morning of Mallette's trial, that the parishioner's letter was read to those present in the Biloxi Lighthouse Church of God. Mallette alleges that he was defamed by the reading of the letter.
¶ 10. A civil court is forbidden, under the First and Fourteenth Amendments to the United States Constitution, from becoming involved in ecclesiastical disputes. In Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich, 426 U.S. 696, *124 709, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), the United States Supreme Court held that in accordance with the doctrine of ecclesiastical abstention, "civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchal polity, but must accept such decisions as binding on them...." This abstention includes church-related questions of discipline, faith, rule, custom, or law. Milivojevich, 426 U.S. at 710, 96 S.Ct. 2372.
¶ 11. The disciplining of a minister is church-related and the doctrine of ecclesiastical abstention requires us to abstain from questioning the manner of Mallette's discipline. In Mallette I, we remanded because we did not know whether the church's disciplinary practice included an announcement to the congregation of a pastor's misdeeds. If it did not, then Mallette's defamation claim stemming from the reading of the letter may have been actionable in a civil court because dissemination of the letter to unprivileged third parties would have had no ecclesiastical justification.
¶ 12. We know now that the Church of God requires that a pastor's misdeeds be handled in accordance with Matthew 18:15-17. The Church of God restricted dissemination of the information contained in the letter to those present at the closed orientation meeting composed of Church of God officials, witnesses, and people whose presence Mallette requested. The affidavits submitted on Mallette's behalf in which the affiants opined that the reading of the letter was not propelled by church doctrine are belied by the unbiased documentary evidence, i.e., the Church of God minutes. The reading of the letter was clearly sanctioned by Church of God procedure. There has been no proof that the information contained in the letter was disseminated outside the confines of the closed hearing, despite Mallette's insinuation that the letter was read to his entire congregation. Summary judgment on this ground was appropriate.

B. Mallette's remaining defamation claims
¶ 13. Mallette claims that someone forged his name onto a beer license in order to discredit him as a person of low moral character. He also claims that someone told Mallette's accounting customers that Mallette was in the habit of turning his customers in to the I.R.S. in order to reap the financial rewards. Finally, Mallette claims that a Church of God member told a high ranking bank officer from Magnolia Federal Bank that Mallette was not a good credit risk. There could be no ecclesiastical reason for a church to engage in this type of conduct against one of its defrocked ministers. Thus, if Mallette could show the existence of genuine issues of material fact that the Church of God defendants engaged in this conduct, he would be entitled to a trial in a civil court.
¶ 14. Mallette must prove four elements to establish his defamation claims: "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." Franklin v. Thompson, 722 So.2d 688 (¶ 11) (Miss.1998).
¶ 15. Allegations had been made that Mallette had obtained a beer license for his grocery and meat market which he owned with a partner. The Church of God overseer appointed an investigation committee because these allegations, if true, would constitute misconduct by a Church of God minister. The investigative committee reported to the Overseer that Mallette *125 had not obtained a beer license. The Overseer ended the inquiry and notified the Mississippi Church of God ministers that the allegations regarding Mallette obtaining a beer license were unfounded. Mallette stated in an affidavit that copies of the letters of the beer committee were sent to Ralph Flowers, an individual who became a new church council member after the beer committee disbanded. That Mr. Flowers received copies of beer committee correspondence, Mallette states in his affidavit, shows a continuing pattern of slander and libel against Mallette.
¶ 16. We do not understand how letters which clear Mallette of charges that he obtained a beer license constitute a "continuing pattern of slander and libel against Mallette" considering the above-listed elements of defamation. Mallette has failed to raise a genuine issue of material fact on this ground.
¶ 17. In Mallette's first affidavit he alleged that after the ecclesiastical trial and subsequent finding of guilt, a woman named Pat Daniels appeared at Mallette's accounting office. Daniels told Mallette that an anonymous person telephoned her husband's brother and informed him that Mallette's accounting firm reports its own clients to the I.R.S. in return for reward money. Daniels told Mallette that her husband had received a similar call the same day. Mallette apparently believes that one of the Church of God defendants told Daniels's husband's brother that Mallette turns clients in to the I.R.S.
¶ 18. Mallette also alleged in his affidavit that a "high ranking officer" of the Magnolia Federal Bank told him that "someone" from the Church of God said that Mallette was a poor credit risk because he no longer had the Long Beach Church of God members to help him make payments. Mallette's allegations are based solely upon hearsay and innuendo. Mallette complains that he could not demonstrate genuine issues of material fact on his defamation claims because he had no meaningful chance to conduct discovery. However, it appears that the only attempt Mallette made at conducting discovery was to file a motion to compel answers to the interrogatories he propounded in the first action, and to serve a subpoena duces tecum on Trustmark Bank for documents pertaining to the sale or purchase of certain certificates of deposit. Mallette filed his motion to compel more than seven months after the supreme court denied certiorari to review our decision in Mallette I. During that time he did not notice one deposition nor did he obtain affidavits of Ms. Daniels or the bank officer, or explain that he tried to obtain their affidavits and they refused to cooperate.
¶ 19. We have reviewed the discovery Mallette propounded and have found that much of it was an attempt to obtain information regarding the Church of God defendants' underlying motivation in bringing charges against Mallette.[1] None of the interrogatories were designed to obtain evidence that the Church of God published defamatory material against Mallette, despite his argument to the contrary. Mallette believes that his following interrogatory request was focused on the areas where he knew certain disclosures had been made:
Please supply any and all documents, other writings, and tangible evidence including any internal memos, letters from or to any of the State of Mississippi Overseers and/or Ministers or any other person, produced by, pursuant to, or in reference to the Beer Committee, or any *126 of its investigative purposes, produced after the Beer Committee was dismissed by State Overseer Carl Allen in his letter of November 30, 1992.
Mallette queries: "How could Mallette be anymore concise?" Mallette could start by explaining how he was defamed by the Church of God's dissemination of information absolving him completely of the charges regarding the beer license. The letters attached to Mallette's own affidavit, dated both before and after the beer committee disbanded, clearly absolve Mallette of any wrongdoing regarding the beer license. None of the interrogatories were aimed at obtaining evidence regarding Mallette's other defamation claims.
¶ 20. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Mallette has not set forth specific facts; rather, he has set forth multiple levels of hearsay without attempting to depose or obtain affidavits from the hearsay declarants. Of course "most, if not all, affidavits are hearsay, but they are nevertheless properly considered on summary judgment motions as long as they are based on personal knowledge and set forth facts such as would be admissible in evidence." Stewart v. Southeast Foods, Inc., 688 So.2d 733, 734 (Miss.1996). Conversely, a hearsay objection to an affidavit is valid if there are hearsay statements within the affidavit itself. Id. at 735.
¶ 21. Mallette's charge in his affidavit regarding an anonymous telephone call to a woman's husband's brother does not raise a genuine issue of material fact that the church defendants published defamatory statements against Mallette to unprivileged third parties. For the same reason, Mallette's charge that an unnamed bank officer told him that an unnamed church member had called Mallette a poor credit risk does not raise a genuine issue of material fact. Mallette needs to offer more than multi-leveled hearsay statements from unnamed declarants to withstand a summary judgment motion. Had Mallette attempted to obtain statements from Ms. Daniels and the bank officer, or had he attempted to depose them, his argument that he was not allowed meaningful discovery might have carried more weight. Because Mallette absolutely failed to set forth specific facts showing that there was a genuine issue for trial on his defamation claims, summary judgment was appropriate in this case. We hereby affirm.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES IS AFFIRMED. COSTS ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, AND MYERS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] Mallette theorized that the Church of God defendants were attempting to discredit him because he had stumbled onto information that implicated them in financial wrongdoing.