# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00070-SCT

*PILGRIM REST MISSIONARY BAPTIST CHURCH BY AND THROUGH ITS BOARD OF DEACONS*
*v.*

*G. W. WALLACE, ELIJAH COOPER, LEWIS WILLIAMS, BOBBY WALLACE AND LEONARD WILSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/8/2002 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DOUG DOUGLAS WADE |
| ATTORNEY FOR APPELLEES: | RAMEL LEMAR COTTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This appeal concerns the consolidation of two actions in Hinds County Chancery Court in which the chancellor ordered a determination of voting members of a church and an election to decide whether to terminate the services of its pastor. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. This case arose as a result of the efforts of members of the Pilgrim Rest Missionary Baptist Church in Terry, Mississippi, to remove Reverend W.R. Griffin as pastor because of disputes over the business practices of the Church. Church members held two meetings at which they voted to remove Griffin. Deacon Sylvester Crisler and Reverend Griffin sought injunctive relief in chancery court as Pilgrim Rest Missionary Baptist Church By and Through Its Board of Deacons (the Board

of Deacons) to enjoin Deacon G.W. Wallace and Trustees Elijah Cooper, Lewis Williams, Bobby Wallace, and Leonard Wilson (the Board of Trustees) from doing any act relating to the business affairs of the Church which is against the Church's by-laws.

¶3. The Board of Trustees responded with a complaint, also on behalf of the Church, seeking a declaration that the Church membership had the right to relieve Reverend Griffin and a motion for a temporary restraining order to prevent the Board of Deacons and Griffin from spending any Church funds as well as to require them to provide an accounting and reimburse the Church for funds spent.[1] They also answered the initial complaint arguing that the Deacons had not been authorized by the membership to bring the action and that, pursuant to the by-laws, neither the pastor nor deacons were authorized to pursue a legal action on behalf of the Church. Specifically, the Board of Trustees alleged that Deacon Crisler and Reverend Griffin on their own and without authorization closed the Church's bank account and moved the funds to an undisclosed location and hired counsel to represent the Church. The chancellor granted the Trustees a preliminary injunction freezing the Church's funds and appointed Drs. Obadiah Myles and Jay T. Smith consulting experts to complete an accounting of all funds deposited and to reconcile Church finances.

¶4. The Hinds County Chancery Court consolidated the two actions. After a hearing, the chancellor ordered a list of qualified voters to be compiled and a formal election for the members to decide if Reverend Griffin would remain as pastor. The chancellor's Final Judgment states in pertinent part:

III.

The Court being reluctant to become involved in church affairs and church business, and to that extent this Court will limit its ruling to the following provisions in terms of its findings.

IV.

---

[1]Deacon D.W. Wallace's name was also removed from the Church's checking account.

The Court references the document that has been marked as Exhibit 1, the Official Christian Handbook According to the Teachings of the Holy Bible for the Pilgrim Rest Missionary Baptist Church of Terry, Mississippi, which in other words has been referred to as the By-Laws.

V.

The Court finds that based upon the testimony of all witnesses and particularly the spiritual leader of the church, Reverend Griffin, very few of these By-Laws have been followed, and even those alleged to have been attempted to be followed actually did not purport to actually reflect the By-Laws. As an example of the fact that only the By-Laws have been referenced in this Court's opinion when it fits or matches the benefit of someone who is trying to enforce the By-Laws on the other [sic]. This Court finds that these By-Laws do not give Reverend Griffin or Deacon Crisler the right to go out and pay an attorney before bringing it to the body of the church over $4,000 in fees before the Church has had an opportunity to vote or determine whether or not that that is the will of the body of the church.

VI.

The Court finds in regard to other instances where the By-Laws have not been followed as they relate to the pastor under charge that it agrees with the respondents that the procedure was not followed verbatim; and the Court finds that it is not sure if it could have been followed because it's so much ambiguity and so much unclearness, or lack of clarity in regard to these By-Laws that this Court is not sure even if one attempted to follow it verbatim that they could follow it.

VII.

The Court finds for the reasons stated that the issue of the By-Laws in terms of who followed the By-Laws and who didn't follow the By-Laws is really not one that the Court can concern itself with at this juncture because there are insufficient By-Laws to determine whether either one of the parties should be held accountable for not following the By-Laws.

* * *

IX.

The Court finds that it is the responsibility of the Court to put a procedure in place to enable the membership to determine who is to be its pastor.[2]

---

[2]An example of the ambiguity within the by-laws is the provision concerning who is vested with responsibility to hold Church property. The by-laws state in Article XI, subdivision D.1. that it is the duty of the trustees "[t]o hold the Church's property in trust, to care for the Church's property and to keep oversight of Church property." Article XI, subdivision A also states, "Trustees shall be held responsible for the business affairs of the Church." Reverend Griffin testified that by custom the trustees were vested with responsibility over the Church's real property and that the Board of Deacons had control over the bank account and financial affairs of the Church. The trustees counter that the Board of Deacons had no authority to hire an attorney or pursue a legal action on behalf of the Church.

¶5. The ambiguity about which the chancellor was chiefly concerned was that contained in the provisions dealing with charging a pastor. The by-laws state that "[a]ll accusations against the Pastor shall be in writing signed by the accuser(s) and submitted to chairman of the Deacon Board." Article VII, subdivision E.2. Furthermore, "The Deacon Board shall give a written notice to the accused Pastor, signed by the chairman and the Secretary of the Deacon Board [Deacon Crisler] before they confer with him." Article VII, subdivision E.3. When asked how the attempts at his ouster failed to comply with the by-laws, Reverend Griffin testified that the two accusers were inactive members of the church and that there was no investigation as required by Art. VII, subdivision E.5. Also, the initial meeting where members voted to remove him was improper because it was not held on church property, and it was not set by the Board of Deacons and presided over by the pastor. Since the attempted ouster did not comply with the by-laws totally, Reverend Griffin simply ignored the letter announcing his removal.

¶6. The result of the election was 54-0 in favor of removing Reverend Griffin. Aggrieved, the Board of Deacons and Griffin appeal and assert various constitutional and procedural errors.

## STANDARD OF REVIEW

¶7. We will not interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *United States Fid. & Guar. Co. v. Estate of Francis ex rel. Francis*, 825 So. 2d 38, 43 (Miss. 2002); *Miller v. Pannell*, 815 So. 2d 1117, 1119 (Miss. 2000).

## DISCUSSION

I. WHETHER THE CHANCELLOR VIOLATED CONSTITUTIONAL PROVISIONS REQUIRING THE SEPARATION OF CHURCH AND STATE.

4

¶8.     The Board of Deacons and Griffin argue that the chancellor's judgment violated the First and Fourteenth Amendments to the United States Constitution in that a civil court became  involved in a ecclesiastical dispute.  Their only supporting authority is the Court of Appeals decision in *Mallette v. Church of God International*, 789 So. 2d 120 (Miss. Ct. App. 2001).  In *Mallette*, a pastor sued the Church of God International and others for defamation after his ministerial license was revoked. 789 So. 2d at 121.  The trial court entered summary judgment in favor of the Church holding that the ecclesiastical abstention doctrine barred such a civil suit.  *Id.*  The Court of Appeals reversed and remanded with instructions to determine if the pastor's claim was in fact barred by the ecclesiastical abstention doctrine, and the trial court again granted summary judgment.  *Id.*  On a second appeal, the Court of Appeals affirmed and stated

> the United States Supreme Court held that in accordance with the doctrine of ecclesiastical abstention, "civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must  accept such decisions as binding on them . . . ."  This abstention includes church-related questions of discipline, faith, rule, custom, or law.

*Id.* at 124 (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976)).

¶9.     The Church of God International in *Mallette* and the Serbian Eastern Orthodox Church in *Milivojevich* are quite different than the Pilgrim Rest Missionary Baptist Church in the instant case. Both of those aforementioned churches are hierarchical in that they are subject to a general or higher church authority.[3]  Baptist churches, on the other hand, are congregational in that "[e]ach church is a distinct organization, independent of others." *Allen v. Roby*, 109 Miss. 107, 67 So. 899, 900 (1915).  Such an arrangement bears on the extent of a civil court's jurisdiction over disputes within the church or among its members.

_____

[3]Perhaps the best known example of a hierarchical church is the Roman Catholic Church.

5

¶10.    This case presents an interesting situation in that it questions not the propriety or justification for dismissing a pastor but whether the court had the authority to order an election in the first place. The Ohio Court of Appeals addresses this dilemma in *Tibbs v. Kendrick*, 637 N.E.2d 397 (Ohio Ct. App. 1994). Collecting authorities from many states, the court summarized the extent of a trial court's jurisdiction: "If the church is congregational, a civil court retains jurisdiction to determine whether the decision concerning 'who shall preach from the pulpit' was made by the proper church authority. The court's jurisdiction is limited to purely secular issues, and the court must not be involved in ecclesiastical issues." 637 N.E.2d at 402 (citations omitted).

¶11.    It clear in this case that the chancellor merely established a procedure whereby the members of Pilgrim Rest could vote on whether they wanted to retain Reverend Griffin as their pastor. She did so in the absence of clear by-laws and a higher church authority. We are keenly aware, as was the chancellor in her order, of a civil court's extreme reluctance to meddle in the ecclesiastical affairs of a church and impotence to rule on matters pertaining thereto. *See Stegall v. Newsom*, 326 So. 2d 803, 807 (Miss. 1976); *Conic v. Cobbins*, 208 Miss. 203, 216, 44 So. 2d 52, 55 (1950). However, we cannot say that the chancellor overstepped her bounds of jurisdiction in ordering an election when doing so was secular in purpose and sanctioned by other jurisdictions. *See McKinney v. Twenty-Fifth Ave. Baptist Church, Inc.*, 514 So. 2d 837 (Ala. 1987) (finding no abuse of discretion in ordering members of competing church factions to compile a list of church members eligible to vote in an election); *Beulah Missionary Baptist Church v. Spann*, 346 N.W.2d 911, 914 (Mich. Ct. App.1984) (holding that the trial court "properly ordered the parties to compile a list of eligible voters not only to assure a fair election, but also to assure that any eligibility questions be resolved before the election was held."). The chancellor did not rule on whether Reverend Griffin was entitled to be pastor. *See Blue v. Jones*, 230 So. 2d 569 (Miss. 1970) (finding question of who were proper

6

trustees, pastor and deacon of congregational church to be ecclesiastical that must be decided by congregation); *Grantham v. Humphries*, 185 Miss. 496, 188 So. 313 (1939) (holding that "church authorities and such tribunals as they may set up for themselves are supreme in such matters. Their decision is final as to who shall be the pastor and other officers. Such disputes are ecclesiastical in their nature and the courts have no control over them."). The problem with applying *Blue* and *Grantham* is that they assume the church has a viable means of passing on such questions. It is clear that Pilgrim Rest did not.[4]

¶12. The Supreme Court of South Carolina recognized the dilemma courts face when confronted with discord within a congregational church:

> It is not for this court to determine who shall or shall not be members of the Mount Zion Baptist Church. It is not for this court, to dictate procedure for the church to follow. *It is the function of this court, however, in these circumstances, to assure that the church itself has spoken.* If it has, this court inquires no further. *If it has not, this court may restore the status quo to enable the church to act.*
>
> We note that this case deals with a congregational church. The situation is substantially different when a hierarchical church is involved. In that situation any judicial relief, if appropriate, would ordinarily await final determination by the highest hierarchical tribunal having jurisdiction over ecclesiastical matters.

*Bowen v. Green*, 272 S.E.2d 433, 435-36 (S.C. 1980) (emphasis added).[5]

---

[4]Police had to be called to the church on several occasions to keep the peace.

[5]Academic commentary has expressed concern over the distinction between hierarchical and congregational churches in the context of pastor terminations:

> [I]t is difficult to see any difference between a civil court deciding whether a minister was properly defrocked in a hierarchical church, and a court adjudicating that same issue when it arises in a congregational setting. In each case, the court is defining criteria which the church, hierarchical or congregational, must employ in selecting its spiritual leaders, a doctrinal matter of purely ecclesiastical concern. Absent any principled distinction, the courts should defer jurisdiction whenever a question of doctrinal interpretation arises in a dispute concerning church discipline, organization, or government, regardless of whether the church is hierarchical or congregational.

David J. Young & Steven W. Tigges, *Into the Religious Thicket–Constitutional Limits on Civil Court*

7

¶13. The chancellor's resolution also complies with Mississippi's Nonprofit Corporations Law. Pilgrim Rest is a "religious society" under the Nonprofit, Nonshare Corporations and Religious Societies Law. Miss. Code Ann. § 79-11-31 (2001). It is also a "religious corporation"[6] under the Mississippi Nonprofit Corporation Act. Miss. Code Ann. § 79-11-127(cc). In the event a corporation is unable to conduct a meeting and vote, directors, officers, delegates or members can seek assistance in chancery court pursuant to Miss. Code Ann. § 79-11-131 which states in pertinent part:

(1) If for any reason it is *impractical or impossible for any corporation to call or conduct a meeting of its members*, delegates or directors, or otherwise obtain their consent, *in the manner prescribed by its articles, bylaws* or Sections 79-11-101 et seq., then *upon petition* of a director, officer, delegate, member or the Attorney General, the *chancery court* of the county where the corporation's principal office . . . is located *may order that such meeting be called or that a written ballot or other form of obtaining the vote of members, delegates or directors be authorized* in such a manner as the court finds fair and adequate under the circumstances.

(2) The court shall, in an order issued pursuant to this section, provide for a method of notice reasonably designed to give actual notice to all persons who would be entitled to notice of a meeting held pursuant to the articles, bylaws and Sections 79-11-101 et seq., whether or not the method results in actual notice to all such persons or conforms to the notice requirements that would otherwise apply. *In a proceeding under this section the court may determine who the members or directors are.*

(emphasis added). Miss. Code Ann. § 79-11-401, dealing with applicability of the Nonprofit Corporation Act to religious corporations, does not except Miss. Code Ann. § 79-11-131.

---

*Jurisdiction Over Ecclesiastical Disputes*, 47 Ohio St. L.J. 475, 493 (1986). While we certainly agree with the authors that such a distinction between a hierarchical and congregational church need not be always drawn, the problem with such an analysis in the instant case is that it presumes a congregation has terminated its pastor in an orderly fashion following clear and established church law.

[6]The Act defines a "religious corporation" as "a corporation organized and operating primarily or exclusively for religious purposes." Miss. Code Ann. § 79-11-127(cc).

¶14.    We recognize the chancellor's awareness of the "religious thicket"[7] in which she was entangled.    There is absolutely no indication of her imposing an ecclesiastical dictate on the congregation of Pilgrim Rest.  On the contrary, she merely sought to establish a procedure in which the majority of the Church could be heard thereby preserving the peace.  We hold that the chancellor was not hamstrung to resolve by secular and statutorily-justifiable means a dispute which could likely lead to a breach of peace.

## II.    WHETHER THE CHANCELLOR VIOLATED MISS. R. CIV. P. 62(a).

¶15.    The Board of Deacons contends the chancellor violated Miss. R. Civ. P. 62(a) because she held a hearing to enforce her final judgment less than ten days after its entry.  Their entire argument consists of a partial quote of Rule 62(a).  The Board of Trustees responds that these consolidated actions sought injunctive relief and were, therefore, not stayed under Rule 62(a).  Rule 62(a) provides:

> Except as stated herein or as otherwise provided by statute or by order of the court for good cause shown, no execution shall be issued upon a judgment nor shall proceedings be taken for its enforcement until the expiration of ten days after the later of its entry or the disposition of a motion for new trial. *Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction or in a receivership action shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal.*  The provisions of subdivision (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction during the pendency of an appeal.

(emphasis added).

¶16.    For whatever reason, the Board of Deacons never quoted the italicized portion of Rule 62(a) in its brief.  It clear, however, that Rule 62(a) excepts injunctions from the automatic stay.  *See* Miss.

---

[7]*See **Serbian E. Orthodox Diocese v. Milivojevich**, 426 U.S. 696, 719, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976).

9

R. Civ. P. 62 cmt.; 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2902 (2d ed. 2002). This assignment of error is without merit.

### III.    WHETHER THE CHANCELLOR VIOLATED MISS. R. CIV. P. 52(a).

¶17.    The Board of Deacons next argues that the "Final Judgment entered by the trial court in this cause on January 8, 2002, does not contain anything resembling the required finding of fact or conclusion of law. It is a somewhat rambling statement from the bench. . . ." They cite no authority for the proposition that the chancellor's order was in some way in violation of Miss. R. Civ. P. 52(a).

¶18.    Rule 52(a) states that in bench trials, "the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly." The seminal case on this point is ***Tricon Metals & Servs., Inc. v. Topp***, 516 So. 2d 236, 239 (Miss. 1987), in which we held where "a case is hotly contested and the facts greatly in dispute and where there is complexity involved therein, failure to make any findings of ultimate fact and conclusions of law will generally be regarded as an abuse of discretion." While it is true the chancellor failed to cite any legal authority, this case is not terribly complex from a factual standpoint, and the facts as stated in her five-page Final Judgment adequately state her findings of fact and aptly explain what she did. *See* 9 James Wm. Moore et al., *Moore's Federal Practice* § 52.02[1], at 52-12 (3d ed. 1997) (main purposes of Rule 52 are "to provide the appellate court with an adequate record for review[] and to guarantee that the trial court carefully reviews the evidence"). The Final Judgment provided us with an adequate record to review and established that the chancellor reviewed the evidence. This assignment of error is without merit.

### IV.    WHETHER THE CHANCELLOR VIOLATED MISS. R. CIV. P. 54(c).

10

¶19. The fourth assignment of error presented by the Board of Deacons is that the chancellor violated Miss. R. Civ. P. 54(c) by granting relief for which no party prayed. Neither party cites any authority whatsoever in support of their respective arguments. That aside, it is axiomatic that the relief need not be limited in kind or amount by the demand but may include relief not requested in the complaint. *See* Miss. R. Civ. P. 54 cmt.; ***Turner v. Terry***, 799 So. 2d 25, 39 (Miss. 2001); ***Tuck v. Blackmon***, 798 So. 2d 402, 410 (Miss. 2001).

¶20. It is unclear why the Board of Deacons would assign such an error. They filed their complaint alleging that there was in the by-laws a specific method for removing a pastor and that the Board of Trustees and members were in violation of those by-laws. All the chancellor did was prescribe a method of election, since it was clear the congregation's intentions could not be carried out under the by-laws. This assignment of error is without merit.

## V. WHETHER THE FINAL JUDGMENT ENTERED WAS VAGUE, AMBIGUOUS, OR UNCERTAIN.

¶21. The final assignment of error is that the Final Judgment was vague, ambiguous, and unclear because it did not set forth a procedure to validate the election. The Board of Deacons' entire argument consists solely of a block-quote from a non-binding treatise stating in effect that a decree should be reasonably certain and fairly precise. They provide no examples of vagueness, ambiguity, or lack of clarity in the Final Judgment.

¶22. With regard to the regulation of the election, the Final Judgment clearly stated:

> The Court orders Dr. Myles and Dr. Smith to regulate an election to be held January 19, 2002, from 2:00 P.M. until 4:00 P.M. at the Pilgrim Rest Missionary Baptist Church, Terry, MS[,] for the purpose of determining what the members of the church want to do. The Court finds that a ballot should be prepared. It is Ordered that if Dr. Myles and Dr. Smith do not accept to conduct the stated election, there shall be someone independent of the church present at the date, time and place stated to set a procedure in place for conduct of this election.

11

¶23. Also, with regard to the eligible voting membership, the chancellor ordered that those eligible to vote would be those members over twelve years of age who live in the Terry area and regularly attend services, regardless of the amount or lack of tithing. Clearly, the chancellor was certain and quite clear in the regulation of the election. Accordingly, this assignment of error is without merit.

## CONCLUSION

¶24. The chancellor did not err in ordering the compiling of a voting list and an election on whether to terminate Reverend Griffin as pastor. We also find the procedural issues raised by the Board of Deacons to be without merit. Therefore, the judgment of the Hinds County Chancery Court is affirmed.

¶25. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**